```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                    DISTRICT OF VERMONT

Ellen Bardin,                   :
     Plaintiff,                 :
                                :
     v.                         :     File No. 2:07-CV-212
                                :
USPS Postmaster General         :
John E. Potter, John H.         :
Adams, Donald LeMay,            :
Heather Payne, William          :
Burrus, Elizabeth Powell,       :
Margo Coy,                      :
     Defendants.                :
```

                    OPINION AND ORDER
                    (Papers 3 and 8)

United States Postal Service ("USPS") employee Ellen Bardin, proceeding *pro se*, brings this action claiming that she is being reassigned in violation of her rights under federal law.  Specifically, Bardin claims that her involuntary reassignment to a different post office constitutes illegal discrimination and retaliation. Currently before the Court is her motion for a preliminary injunction seeking a stay of the reassignment.[1]

The defendants oppose the motion, submitting that Bardin's reassignment is the result of an independent

---

[1] A hearing on the motion for a preliminary injunction was held on October 25, 2007.

audit by outside managers, and that she was selected purely on grounds of seniority pursuant to the terms of a Collective Bargaining Agreement.  For the reasons set forth below, the motion for a preliminary injunction is DENIED.

## Factual Background

Bardin commenced this action on October 12, 2007, seeking to stay her involuntary reassignment from her position as a clerk in the post office in Waterbury, Vermont.  Bardin is a full-time employee, lives in Waterbury, and has been at the Waterbury Post Office since 1989.  She currently walks or rides her bike to work, does not own a vehicle, and because of vision problems is unable to drive at night.

In a letter dated August 24, 2007, Bardin was advised that "due to the Function 4 review recently conducted in the Waterbury Post Office, you will become excessed to the needs of this installation and you will be involuntarily reassigned as a full-time clerk at an installation to be determined in the future."  (Paper 1-4.)  Bardin was further informed that she had the option of moving to a part-time flexible position "in lieu of

the above involuntary assignment," and that her involuntary assignment would become effective no sooner than 60 days from the date of the letter.  Id.  Bardin has not accepted the offer of a part-time position.

In a written response to an inquiry in this matter from the office of United States Senator Patrick Leahy, USPS District Manager James Adams explained that the Waterbury post office recently received an "operational review . . . in order to right size the office staffing." (Paper 1-7.)  The team that conducted the review was comprised of current and former postmasters, none of whom were from Vermont or knew Bardin personally.  (Paper 26 at 4.)  Similar reviews have thus far been conducted at 130 post offices in the New Hampshire/Vermont District. Id. at 3.

The review recommended reconfiguring the Waterbury post office from two full-time and two part-time clerks to one full-time and three part-time clerks.  Id. at 4-5. District Manager Adams asserts in his letter that the creation of an additional part-time position allows the postmaster extra flexibility.  "A part-time flexible clerk's work hours are just that; they are flexible so

that the postmaster can customize their schedule depending on the needs of the office . . . . A part-time flexible employee is exactly what was needed in order for Waterbury to run efficiently and effectively." (Paper 1-7.)

The defendants submit that the decision of which full-time clerk to reassign is determined solely by the terms of the Collective Bargaining Agreement ("CBA") between the USPS and the American Postal Workers Union. The CBA requires that the clerk with the least seniority be reassigned. There is no dispute that Bardin is less senior to the other full-time clerk in Waterbury.

In a letter dated October 19, 2007, the USPS informed Bardin that, effective October 27, 2007, she is being involuntarily reassigned to a post office in Essex Junction, Vermont. Bardin informs the Court that Essex Junction is approximately 27 miles from her home in Waterbury. Her shift hours are to be 10:00 a.m. to 7:00 p.m. She will retain her current level of seniority, and upon written request may be returned to the first opening in Waterbury. She is to report to her new position on Monday, October 29, 2007.

Bardin claims that the decision to reassign her is the result of discrimination and retaliation. In 1989, Bardin filed a complaint with the Equal Employment Opportunity Commission ("EEOC") apparently asserting claims of sexual harassment. She also claims that in 1992 she was "held out of [her] job," and that a stipulated court order required that she be reinstated. The order further barred any further sexual harassment or retaliation for EEOC activity. Id.

Bardin asserts that since 1992, USPS management has retaliated against her. For example, in 2000 she was scheduled for a training. However, when she arrived at the training she was informed that, unlike other clerks in the Waterbury post office, she was not going to be trained. Id. at 2. She also alleges that, since the arrival of Postmaster Heather Payne in 2000, she has been the only clerk denied a key to the Postmaster's office. Other allegedly retaliatory acts by Payne have included: not allowing Bardin to speak with customers when they call and ask for her; not allowing co-workers to share job-related information needed by Bardin to perform her job effectively; and attempting to "change customer

compliments about me into complaints." Id.

Bardin states that between 1992 and 2000 she filed 186 grievances and reports, and that since Postmaster Payne's arrival in Waterbury in May 2000, she has filed 1,000 additional grievances. Id. Her complaint alleges that union officials have failed to represent her since 1998.

## Discussion

### I. Preliminary Injunction Standard

"A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 152-53 (2d Cir. 2007). Injunctive relief is an extraordinary remedy and one not to be given lightly. See, e.g., Register.com v. Verio, Inc., 356 F.3d 393, 426 (2d Cir. 2004). The government submits that the "fair ground for litigation" standard may not apply in this case because Bardin is arguably

seeking to stay "'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" (Paper 6 at 5, quoting Plaza Health Labs, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989)).  Regardless of the whether the fair ground for litigation standard applies, a preliminary injunction will not issue in this case because Bardin has failed to show irreparable harm.

II.  Irreparable Harm

In deciding whether harm is irreparable, a court concerns itself only with harm "arising during the interim between the request for an injunction and final disposition of the case on the merits."  Jayaraj v. Scappini, 66 F.3d 36, 40 (2d Cir. 1995).  The harm must be neither remote nor speculative, but actual and imminent, and cannot be remedied by an award of monetary damages.  Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998).

It is well-established that the federal government is traditionally granted the widest latitude in the "dispatch of its own internal affairs," Cafeteria Workers v. McElroy, 367 U.S. 886, 896 (1961).  Federal employees seeking injunctive relief in personnel cases must make a

"particularly strong showing of irreparable harm." Lafayette v. Frank, 688 F. Supp. 138, 144-46 (D. Vt. 1988); see American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 766 F.2d 715, 721 (2d Cir. 1985) (citing Sampson v. Murray, 415 U.S. 61, 91-92 (1974)).

Here, Bardin has failed to show that her transfer to Essex Junction will cause her irreparable harm. As a result of her transfer, she will retain the same pay level, benefits and seniority. The USPS will pay for her moving expenses, mileage, and per diem as allowed under USPS policy. (Paper 1-4). Simply put, any monetary concerns either will be, or can be, addressed.

Aside from the logistical difficulties of her reassignment,[2] and her understandable distress at having to leave a community that she has served for nearly 20 years, Bardin has not articulated further harm. These difficulties, although unfortunate, are not sufficient to establish irreparable harm. See, e.g., Hartzog v. Reebok

---

[2] Bardin has written to Postmaster Payne and requested an accommodation due to her inability to drive at night. (Paper 20.) While the Court has concerns about Bardin's ability to commute to and from the Essex Junction location, there has been no showing to date (1) that she will be unable to work the assigned shift at the Essex Junction post office, or (2) that moving closer to Essex Junction will result in irreparable harm.

Int'l Ltd., 77 F. Supp. 2d 475, 476-77 (S.D.N.Y. 1999) (losing employment due to alleged retaliation, absent extraordinary circumstances, does not constitute irreparable harm); Fischer v. Dole, 624 F. Supp. 468, 469 (D. Mass. 1985) (no irreparable harm where government employee transferred to new location 425 miles away) (citing Sampson, 415 U.S. at 83).

The Court notes that, by all accounts, Bardin is well-loved by the Waterbury community. Moreover, there has been no suggestion that her reassignment was in any way related to her job performance. While Bardin may, given her rights under the CBA, be able to return to Waterbury at some point in the future, the evidence before the Court does not authorize a stay of her reassignment to Essex Junction at this time. The motion for a preliminary injunction is, therefore, DENIED.

III.  Motion for Continuance

Bardin's motion for a continuance (Paper 8) is also DENIED. Bardin has requested extra time so that she may retain counsel and present additional information. Given that the Court is unable, under the law, to issue an injunction at this time, a continuance without an

injunction would be of little value to the plaintiff. The Court will, however, deny the motion for preliminary injunction without prejudice, such that it may be brought again after Bardin retains counsel.

## Conclusion

For the reasons set forth above, Bardin's motion for a preliminary injunction (Paper 3) is DENIED without prejudice, and her motion for a continuance and stay (Paper 8) is DENIED.

Dated at Burlington, in the District of Vermont, this 29th day of October, 2007.

```
                        /s/ William K. Sessions III
                        William K. Sessions III
                        Chief Judge, United States District Court
```